UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


MID-ATLANTIC REGIONAL COUNCIL
OF CARPENTERS – WEST VIRGINIA
DISTRICT and
CARPENTERS HEALTH FUND
OF WEST VIRGINIA and
CARPENTERS PENSION FUND
OF WEST VIRGINIA,

          Plaintiffs,


v.                                      Civil Action No. 2:11-cv-0414

SHAMBLIN CONSTRUCTION, INC.,

          Defendant.


MEMORANDUM OPINION AND ORDER


        Pending are cross motions for summary judgment, filed

April 19, 2012.


                        I.   Background


        Plaintiffs Mid-Atlantic Regional Council of Carpenters

- West Virginia District ("Carpenters Union"), the Carpenters

Health Fund of West Virginia ("Health Fund"), and the Carpenters

Pension Fund of West Virginia ("Pension Fund") bring this action

pursuant to section 301 of the Labor Management Relations Act,

29 U.S.C. § 185, and sections 502 and 515 of the Employee

Retirement Income Security Act of 1974 ("ERISA), 29 U.S.C. §§ 1132(a) and 1145, to enforce the collective bargaining agreement between the parties.  Defendant Shamblin Construction, Inc., is a corporation with its principal place of business at 334-C Call Road, Sissonville, West Virginia.

In the late spring 1991, Shamblin Construction began performing work as part of the construction of Van High School in Van, West Virginia.  Sometime in April, Ralph Shamblin, president of Shamblin Construction, was contacted by a union official who sought to persuade the company to sign a union contract and use union labor on the Van High School project. (Def.'s Resp. to Pl.'s First Set of Interrogatories).  Shamblin did not agree, and within approximately two to three weeks thereafter, union representatives began picketing the job site. (Id.).  The picket line lasted around three weeks.  (Shamblin dep. at 10-11).  In order to resolve the dispute, Shamblin met with representatives of the Carpenters Union and another union, described only as the "Laborers' Union," and was told that he could agree to a contract that would be limited to the Van High School project.  Shamblin agreed and executed two contracts on behalf of Shamblin Construction.  (Shamblin dep. at 17-19).

The contract with the Laborers' Union, signed by Shamblin for defendant on May 3, 1991, excluded private

2

residential projects from its reach and was set to expire on June 1, 1992 -- terms consistent with Shamblin's view that the agreement was a "one job contract."  (Shamblin dep. at 13-14 (quoting Laborers' Agreement).  In contrast, the one-page contract Shamblin signed for Shamblin Construction with the defendant Carpenters' Union on May 14, 1991, is silent as to the exclusion of private residential construction and its expiration.  (Collective Bargaining Agreement ("CBA"); Shamblin dep. 14-15).

Following the completion of the Van High School project -- and according to defendant, after the collective bargaining agreements had expired -- Shamblin Construction continued to pay into the union Health Fund and Pension Fund ("Benefit Funds") when the company performed work on prevailing wage projects, though if the project was residential in nature or a non-prevailing wage project, Shamblin Construction would not pay into the Benefit Funds.  (Def.'s Resp. to Pl.'s First Set of Interrogatories).  Defendant maintained this practice for employees who were union members who wanted their fringe benefits from prevailing wage jobs paid into the Benefit Funds, and claims it did so not because of any contractual obligation. (Id.).  Shamblin Construction continued this practice for 19 years.  No additional contracts were thereafter entered into

3

between Shamblin Construction and any union, although over the years various unions sought such agreements.  (Shamblin dep. at 27-28).

Beyond the project undertaken at Van High School, Shamblin Construction had no contact with the Carpenters' Union until the company was audited in May 2008 at the request of the Benefit Funds -- nearly 17 years after the Van High School project.  (Audit Letter dated May 21, 2008).  The audit determined that Shamblin Construction owed the Benefit Funds $30,468 pursuant to a requirement that it contribute certain funds to the Benefit Funds, specifically the Carpenters Health and Welfare Fund[1] and the Carpenters Pension Fund.

On June 13, 2011, plaintiffs filed their complaint, asserting a claim for monies due under the CBA and brought pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA), 29 U.S.C. §§ 1132(a) and 1145.  Following discovery, defendant moved for summary judgment on April 19, 2012.  On the same day, plaintiff moved for summary judgment on the issue of liability.

---

[1] Nothing in the record indicates that defendant Carpenters Health Fund is different from the Carpenters Health and Welfare Fund aside from an apparent name change since the CBA was signed.

## II.   Motions for Summary Judgment

### A.   Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record

as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

B.    The Collective Bargaining Agreement

To determine whether Shamblin Construction's obligation to pay into the Benefit Funds continued beyond the Van High School project, the court must look to the parties' agreement as the expression of their intent.  See District 29, United Mine Workers v. Royal Coal Co., 768 F.2d 588, 590 (4th Cir. 1985).[2]  In so doing, courts "may look to consistent common law rules of contractual interpretation for guidance as long as

_____

[2] "The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion."  Keffer v. H.K Porter Co., Inc., 872 F.2d 60, 62 (4th Cir. 1989) (quoting Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers v. Yard-Man, Inc., 716 F.2d 1476, 1479 (6th Cir. 1983)).

their application is consistent with federal labor policies."
Int'l Union of Operating Eng'rs Local 571 v. Hawkins Constr.
Co., 929 F.2d 1346, 1349 (8th Cir. 1991) (citing Textile Workers
Union, 353 U.S. 448, 456-57 (1957)); accord Royal Coal Co., 768
F.2d at 590; District 17, Dist. 29, Local Union 7113, & Local
Union 6023, UMWA v. Allied Corp., 765 F.2d 412 (4th Cir. 1985);
Keffer v. H.K. Porter Co., Inc., 872 F.2d 60, 62 (4th Cir.
1989).  This is so because section 301 provides authority for
federal courts to develop federal common law for uniform
enforcement of collective bargaining agreements.  Textile
Workers, 353 U.S. at 450-51.

        In this case, plaintiffs assert that the CBA contains
what is commonly-known as an "evergreen clause" -- a type of
provision that, in general, allows a collective bargaining
agreement to continue year to year unless a party undertakes a
procedure to withdraw from or modify the agreement.  Plaintiffs
do not direct the court to any particular clause -- evergreen or
otherwise -- and the court discerns none.[3]  In short, the CBA is

---

        [3] It should be noted that the CBA incorporates another
contract by reference.  Paragraph 2 of the CBA states as
follows:

        Both the undersigned Employer and said District
        Council have read Building Constitution 1986 – 1989
        Agreement between the Kanawha Valley Builders
        Association and The Chemical Valley District Council
        of Carpenters and both parties desire to govern

silent as to its duration.  The court must thus look to
extrinsic evidence to supply the omission.  See <u>Yoho v. Borg-
Warner Chemicals</u>, 406 S.E.2d 696, 697 (W. Va. 1991) ("[T]he law
does provide that parol evidence may be used to explain
uncertain, incomplete, or ambiguous contract terms.").

       As noted above, Shamblin testified that at the time
the agreement was executed he believed the CBA was a one-job
contract.  Plaintiffs counter with evidence indicating that
Shamblin Construction continued to pay into the union Benefit
Funds whenever the company performed work on prevailing wage
projects, and that this demonstrates its continued adherence to
the CBA in the years following the Van High School project.
(<u>See</u> Def.'s Resp. to Pl.'s First Set of Interrogatories).

---

relations, wages and all conditions of employment by
said Agreement, both parties hereto hereby incorporate
all provisions of said Agreement in this Collective
Bargaining Agreement, and both parties agree to be
bound thereby as well as by all subsequent renewal,
modifications, amendments, and addendums to said
Agreement.

(CBA at ¶ 2) (emphasis in original).  The document incorporated
by reference -- the Building Constitution 1986–1989 Agreement
between the Kanawha Valley Builders Association and The Chemical
Valley District Council of Carpenters (the "Building
Constitution") -- is not in the record.  By order entered May 8,
2012, the court directed counsel for plaintiffs to make the
Building Constitution part of the record.  On May 15, 2012,
counsel for plaintiff Mark W. Carbone reported to the court's
law clerk by telephone that despite plaintiffs' best efforts, no
copy of the Building Constitution could be found.  Even so,
plaintiffs do not assert that the purported evergreen clause is
contained in the Building Constitution.

Defendant responds that it maintained this practice for employees who were union members who wanted their fringe benefits from prevailing wage jobs paid into the union Benefit Funds, and claims it did so not because of any contractual obligation.  (Id.).  This evidentiary parting-of-ways gives rise to a rather clear-cut dispute of material fact inappropriate for resolution on summary judgment.[4]

C.    ERISA Statute of Limitations

Defendant advances the additional contention that plaintiffs' claim is time barred, citing solely to section 515 of ERISA, 29 U.S.C. § 1451(f).  This is mistaken.  ERISA does not contain a limitations period for suits against employers to recover delinquent contributions owed to a multiemployer plan, such as the Benefit Funds in this case.  See 29 U.S.C. § 1145;

---

[4] Ordinarily, the construction and interpretation of a contract is a question of law for the court.  Fraternal Order of Police, Lodge No. 69 v. City of Fairmont, 468 S.E.2d 712, 715 (W. Va. 1996).  Even so, when parties assert conflicting intentions based upon the same contractual language, the resulting ambiguity presents a genuine issue of material fact. See Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1126 (4th Cir. 1993) ("If . . . resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact."); Atalla v. Abdul-Baki, 976 F.2d 189, 195 (4th Cir. 1992) ("If there is more than one permissible inference as to intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact.").

Teamsters & Employers Welfare Trust v. Gorman Bros. Ready Mix,
283 F.3d 877, 880 (7th Cir. 2002).  Section 1451(f), which also
covers suits by multiemployer plans, sets a limitations period
only for actions for withdrawal liability.  See Bay Area Laundry
and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,
Inc., 522 U.S. 192, 196 (1997).

&ldquo;As a default, courts faced with such omissions borrow
the state law limitations period applicable to claims most
closely corresponding to the federal cause of action . . . .&rdquo;
White v. Sun Life Assur. Co. of Canada, 488 F.3d 240, 245 (4th
Cir. 2007) (citations omitted); see also Shofer v. Hack Co., 970
F.2d 1316, 1319-20 (4th Cir. 1992) (borrowing state statute of
limitations in ERISA case).  Many courts of appeal have held
that the most analogous state limitations period for delinquent
contributions claims is that which applies to claims for breach
of contract.  See Trustees of the Wyoming Laborers Health and
Welfare Plan v. Morgen & Oswood Constr. Co., Inc., 850 F.2d 613,
620 (10th Cir. 1988); Trustees of the Operative Plaster's
Protective and Benefit Society, 794 F.2d 1217, 1221 n.8 (7th
Cir. 1986); Central States Southeast and Southwest Areas Pension
Fund v. Kraftco, Inc., 799 F.2d 1098, 1105 (6th Cir. 1986);
Robbins v. Iowa Road Builders Co., 828 F.2d 1348, 1352 (8th Cir.
1987); Trustees for Alaska Laborers v. Ferrell, 812 F.2d 512,

10

517 (9th Cir. 1987).  Several district courts in this circuit have followed suit.  See Connors v. Paybra Mining Co., 817 F. Supp. 34, 36-37 (S.D. W. Va. 1993); Board of Trustees v. D'Elia Erectors, 17 F. Supp. 2d. 511, 513–14 (E.D. Va. 1998).  In West Virginia, the most analogous provision is West Virginia Code § 55-2-6, which provides for a 10-year limitations period for actions for breach of written contracts.  See Connors, 817 F. Supp. at 36-37.

This action was filed on June 13, 2011.  The audit that revealed defendant's alleged delinquency was reported to plaintiffs by letter dated May 21, 2008.  Inasmuch as defendant does not challenge plaintiffs' contention that they first became aware of defendant's alleged delinquency sometime following the 2008 audit and filed suit slightly over four years later, the 10-year limitations period presents no bar here.

### III.   Conclusion

In view of the foregoing, it is ORDERED that the cross motions for summary judgment be, and they hereby are, denied.

The Clerk is directed to forward copies of this

written opinion and order to all counsel of record.


DATED: June 5, 2012

John T. Copenhaver, Jr.
United States District Judge